UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

MICHAEL DAVIS-GUIDER,                                            **COMPLAINT**

                                              Plaintiff,          Docket No.
          -against-                                                1:17-cv-1290(FJS/DJS)
                                                                  <u>Jury Trial Demanded</u>
CITY OF TROY, RONALD FOUNTAIN, Individually,
DANIELLE COONRADT, Individually, CHARLES MCDONALD,
Individually, RENSSELAER COUNTY, MICHAEL SIKIRICA,
Individually, and JOHN and JANE DOE 1-10, Individually, (the
names John and Jane Doe being fictitious, as the true names are
presently unknown),

                                              Defendants.

-----------------------------------------------------------------------------------X

         Plaintiff MICHAEL DAVIS-GUIDER, by his attorneys, Brett H. Klein, Esq., PLLC,

complaining of the defendants, respectfully alleges as follows:

### **Preliminary Statement**

         1.      Plaintiff brings this action for compensatory damages, punitive damages and

attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, as such

rights are secured by said statutes and the Constitution of the United States.  Plaintiff also brings

a related supplemental state law claim.

### **JURISDICTION**

         2.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, and the Fifth,

Sixth, and Fourteenth Amendment to the United States Constitution.

         3.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

4.      Venue is properly laid in the Northern District of New York under 28 U.S.C. §

1391(b) in that this is the District in which the claims arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to

Fed. R. Civ. P. 38(b).

## PARTIES

6.      Plaintiff MICHAEL DAVIS-GUIDER is a thirty-one-year-old African American

man who presently resides in New York City.

7.      Defendant City of Troy was and is a municipal corporation duly organized and

existing under and by virtue of the laws of the State of New York.

8.      Defendant City of Troy is a municipal corporation existing by virtue of the laws of

the State of New York.  At all relevant times, defendant City of Troy maintained its own police

force, the City of Troy Police Department (hereinafter referred to as "TPD"), whose principal

function was to enforce criminal and administrative laws and rules in and about the City of Troy.

9.      At all relevant times herein, defendants RONALD FOUNTAIN, DANIELLE

COONRADT, CHARLES MCDONALD, and JOHN and JANE DOE 1 through 10, were duly

sworn police officers and/or detectives and/or supervisors of the TPD.  Said defendants are sued

herein in their individual capacities.

10.     Defendant Rensselaer County was and is a municipal corporation duly organized

and existing under and by virtue of the laws of the State of New York.

11.     Defendant Rensselaer County, as part of its Department of Health, employed,

managed, and was otherwise responsible for the Rensselaer County Medical Examiner, which

contracted with its employee and/or agent, defendant MICHAEL SIKIRICA, to, *inter alia,* conduct forensic investigations and to prepare autopsy reports.

12.     Defendant MICHAEL SIKIRICA was and is a medical doctor who conducts autopsies for defendant Rensselaer County, in so doing, acts under color of law.  He is being sued in his individual capacity.

## FACTS

13.     On February 26, 2015, Mr. Davis-Guider was home with his girlfriend's daughter, V.D., who at the time was two years and seven months of age.

14.     When V.D. woke up that day, she was acting tired and low energy, so V.D. went back to sleep.

15.     Mr. Davis-Guider started to watch a movie, and then also fell asleep.

16.     A couple of hours later, Mr. Davis-Guider awoke and went to check on V.D.

17.     He found V.D. unresponsive in her bed.

18.     Mr. Davis-Guider immediately tried to administer C.P.R. and called 911.

19.     Emergency personnel arrived, and among other interventions, also administered C.P. R.

20.     V.D. remained unresponsive.

21.     V.D. was transported to St. Mary's Hospital – Seton Health.

22.     At Seton Health, C.P. R. was continued, however, V.D. remained unresponsive and was pronounced dead in the emergency room.

23.     Later, on February 26, 2015, Mr. Davis-Guider was questioned by and/or in the presence of defendant TPD detectives RONALD FOUNTAIN and CHARLES MCDONALD.

24.     Mr. Davis-Guider reiterated the same chain of events as described above and at all times denied having engaged in any acts which caused or could have contributed to V.D.'s unresponsive state or to her tragic death.

25.     On February 27, 2015, the Rensselaer County medical examiner, defendant SIKIRICA performed the autopsy of V.D.

26.     Defendant SIKIRICA performed the autopsy in the presence of defendant TPD officers, and after reviewing a number of police generated materials, including the February 26, 2015 interrogation, during which Mr. Davis-Davis-Guider reported that he had tried to administer C.P.R. after finding V.D. unresponsive.  Defendant SIKIRICA also discussed his findings with defendant TPD officers during and after the autopsy,

27.     Defendant SIKIRICA also reviewed the emergency room records which confirmed that after Mr. Davis-Guider administered C.P.R., EMTs and hospital staff continued to administer C.P.R. for a significant period of time thereafter.

28.     After speaking with defendant SIKIRICA and observing the autopsy, defendant FOUNTAIN requested that Mr. Davis-Guider come to the station house for further questioning.

29.     Mr. Davis-Guider voluntarily did so, and again reiterated the same chain of events as described above, and at all times denied having engaged in any acts which caused or could have contributed to V.D.'s unresponsive state or to her death.

30.     On August 15, 2015, defendant SIKIRICA issued his autopsy report ruling the manner of death to be a homicide, and the cause of death to be hypovelmic shock due to large hemoperitoneum due to multiple lacerations of the liver with right rib fractures due to blunt force trauma.

4

31. Defendant SIKIRICA apparently made this determination based on his finding that V.D. had fractures of her 9th and 10th ribs, which had resulted in lacerations to V.D.'s liver, and noted the following: "History of decedent reportedly found unresponsive with reported history of attempted cardiopulmonary resuscitation by a large adult."

32. Defendant SIKIRICA omitted from his report that in addition to the "large adult", presumably meaning Mr. Davis-Guider, EMTs and hospital staff had also administered C.P.R. for a prolonged period of time after plaintiff's very brief attempt.

33. Furthermore, defendant SIKIRICA ruled V.D.'s death a homicide, even though he lacked any evidence to support the conclusion that any rib fractures caused V.D.'s death, insofar as he was aware that V.D. was found unresponsive prior to C.P.R. ever being administered by Mr. Davis-Guider or by multiple health professionals.

34. After defendant SIKIRICA issued his report, defendant FOUNTAIN again requested that Mr. Davis-Guider report to the station house for further questioning on September 9, 2015.

35. Mr. Davis-Guider voluntarily did so, and again reiterated the same chain of events as described above, and at all times denied having engaged in any acts which caused or could have contributed to V.D.'s unresponsive state or to her death.

36. Thereafter, based solely on defendant SIKIRICA's unsupported medical opinion, which was rendered in conspiracy with the defendant TPD officers, and ignoring clear facts which contradicted defendant SIKIRICA's findings, including that V.D. was already unresponsive when C.P.R. was first administered and that multiple people administered C.P.R., defendant TPD officers arrested Mr. Davis-Guider on October 2, 2015, several months after V.D.'s tragic passing.

37.   There was no reason to believe that Mr. Davis-Guider was responsible in any way for V.D.'s injuries.   Defendant SIKIRICA's unsupported autopsy report, which was, upon information and belief, created in conspiracy with and in furtherance of the TPD defendant officers' arrest of plaintiff, gave the defendant TPD officers a fabricated cover for Mr. Davis-Guider's arrest.

38.   As a result of the false allegations levied against him by the defendant TPD officers, plaintiff was arraigned on false manslaughter charges, and thereafter remanded to the Rensselaer County Jail, where he remained through his criminal trial.

39.   Mr. Davis-Guider's criminal case proceeded to trial in August 2016, under Rensselaer County Case Number 15-1094.

40.   Defendants RONALD FOUNTAIN, DANIELLE COONRADT, CHARLES MCDONALD, and MICHAEL SIKIRICA testified at plaintiff's trial.

41.   Mr. Davis-Guider was thereafter acquitted by a jury of all charges on August 25, 2016.

42.   Defendants RONALD FOUNTAIN, DANIELLE COONRADT, CHARLES MCDONALD, MICHAEL SIKIRICA, and JOHN and JANE DOE 1 through 10 either directly participated in the above-described illegal acts, failed to intervene in them despite a meaningful opportunity to do so, or supervised and approved of, oversaw, and otherwise conspired or participated in the aforementioned misconduct.

43.   All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of Troy and Rensselaer County, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees, and the City of Troy's *de facto* policy of engaging in unlawful collusion with the Rensselaer Medical Examiner

to create and/or manufacture false medical evidence in support of the false arrests, fabrication of evidence and malicious prosecutions of innocent individuals being charged with crimes.

44.     The aforesaid event is not an isolated incident.  Defendant City of Troy is aware from sources that include lawsuits, notices of claims, complaints, news reports, internal investigations, and failed prosecutions, that many TPD officers, including the defendants, engage in misconduct, and that they otherwise engage in unlawful collusion with the Rensselaer Medical Examiner.

45.     Defendant City of Troy is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, defendant City of Troy has failed to take corrective action.  This failure caused the officers in the present case to violate the plaintiff's civil rights.

46.     Moreover, upon information and belief, defendant City of Troy was aware prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, defendant City of Troy has retained these officers, and failed to adequately train and supervise them.

47.     Defendant Rensselaer County is likewise aware from lawsuits, notices of claims, complaints, news reports, and failed prosecutions,  that its medical examiner, Defendant SIKIRICA, was *inter alia,* not acting independently, was overworked and not careful in his work, did not adequately investigate the prior medical history of decedents, and had on other occasions similarly offered faulty diagnoses and cause of death determinations, which ignored obvious medical evidence, in an effort to ultimately aid in the false arrest, fabrication of evidence and malicious prosecutions of innocent individuals being charged with crimes by law enforcement agencies in Rensselaer County and by the Rensselaer County District Attorney's Office.

For example, defendant Rensselaer County and the City of Troy were aware from the trial of Joseph McElheny, who was similarly arrested by TPD officers, prosecuted by the Rensselaer County District Attorney's Office, and in 2011, acquitted of murdering his four-month-old daughter, that defendant SIKIRICA had similarly ignored extensive medical evidence which supported a finding that the child had died of natural causes, and provided a cause of death and medical diagnosis consistent with the urging of investigating police and prosecutors who were seeking a homicide conviction.

*See e.g.* http://www.troyrecord.com/article/TR/20111012/NEWS/310129978.

48.     Despite knowing this, defendant County again relied on Defendant SIKIRICA's services in this case.

49.     Defendant County is further aware of problems with defendant SIKIRICA from the trials of Adrian Thomas, who was also similarly arrested by TPD officers, prosecuted by the Rensselaer County District Attorney's Office, and in 2015, acquitted of charges including murder arising from the death of his four-month-old son after his initial conviction was overturned by the Court of Appeals.  In Thomas, defendant SIKIRICA, *inter alia,* ignored medical evidence that Thomas' son had died of natural causes from sepsis, and provided a diagnosis consistent with the urging of police and prosecutors who were seeking a murder conviction against Thomas. Defendant Fountain was likewise involved in Thomas' case.

50.     Furthermore, testimony at Mr. Davis-Guider's trial confirmed that defendant SIKIRICA was overworked, handling more cases than a medical examiner should and could at any given time, resulting in defendant SIKIRICA executing his duties without the level of care and diligence required of a person with his authority and influence over serious criminal prosecutions, including cases involving alleged homicides.

51.     Based on the foregoing, the County was aware that defendant SIKIRICA lacked the objectivity, temperament, discretion, and disposition to be employed as County's medical examiner, and to otherwise competently provide evidence and testify against criminal defendants in homicide and other serious felony prosecutions.

52.     The wife of Mr. McElheny aptly described this pattern and practice in a written statement released after her husband's acquittal:

> Parents are being targeted, often at the worst moments in their lives, by overzealous police and child protective investigators . . .. These investigators use the parents' grief and the memories of their children to coerce them into making statements of self-implication. Most often, the parents want answers even more than authorities do. Instead, what they get are accusations and blame.  None of this would be possible without the medical establishment standing by and doing nothing.  This is a discussion we all should be having as a society. . . .We need to shine a light on child abuse, but not at the expense of tearing apart innocent families, and not with a blind eye toward the injustice that results from jumping to conclusions. *See* http://www.troyrecord.com/article/TR/20111012/NEWS/310129978.

53.     Despite such notice, defendant Rensselaer County continued to allow these malicious and unsupported prosecutions to proceed, and it continued to retain defendant SIKIRICA and to proffer his reports and otherwise utilize his services in furtherance of said prosecutions, and it failed to adequately train, supervise and properly discipline the Rensselaer County District Attorney and Assistants District Attorneys in that office, and defendant SIKIRICA, or to take any steps whatsoever to avoid tragic miscarriages of justice such as the wrongful conviction of Mr. Davis-Guider.

54.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

55.     All of the aforementioned acts deprived plaintiff MICHAEL DAVIS-GUIDER of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

56.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

57.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

58.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER sustained, *inter alia*, physical injuries, emotional distress, embarrassment, and humiliation, and deprivation of his constitutional rights.

### AS AND FOR A FIRST CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

59.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "58" with the same force and effect as if fully set forth herein.

60.     The individually named defendants caused MICHAEL DAVIS-GUIDER to be arrested without probable cause, causing him to be detained against his will for an extended period of time and subjected to physical restraints from his arrest through his arraignment.

61.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. § 1983)

62.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "61" with the same force and effect as if fully set forth herein.

63.     The individually named defendants initiated commenced and continued a malicious prosecution against plaintiff MICHAEL DAVIS-GUIDER.

64.     The individually named defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff MICHAEL DAVIS-GUIDER.

65.     The individually named defendants lacked probable cause to initiate criminal proceedings against plaintiff MICHAEL DAVIS-GUIDER.

66.     The individually named defendants acted with malice in initiating criminal proceedings against plaintiff MICHAEL DAVIS-GUIDER.

67.     The individually named defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff MICHAEL DAVIS-GUIDER.

68.     The individually named defendants lacked probable cause to continue criminal proceedings against plaintiff MICHAEL DAVIS-GUIDER.

69.     The individually named defendants acted with malice in continuing criminal proceedings against plaintiff MICHAEL DAVIS-GUIDER.

70.     The prosecution terminated in plaintiff MICHAEL DAVIS-GUIDER's favor.

71.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of Right to Fair Trial under 42 U.S.C. § 1983)

72.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "71" with the same force and effect as if fully set forth herein.

73.     The individually named defendants created false evidence against plaintiff MICHAEL DAVIS-GUIDER and forwarded that false evidence to the Rensselaer County District Attorney's Office.

74.     Defendants used false evidence against plaintiff MICHAEL DAVIS-GUIDER in legal proceedings.

75.     As a result of defendants' creation, forwarding to prosecutors, and use of false, fabricated evidence, plaintiff MICHAEL DAVIS-GUIDER suffered a violation of his constitutional rights to a fair trial and to due process, as guaranteed by the Fifth, Sixth and/or Fourteenth Amendments of the United States Constitution.

76.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)

77.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "76" with the same force and effect as if fully set forth herein.

12

78.     The individually named defendants had an affirmative duty to intervene on behalf of plaintiff MICHAEL DAVIS-GUIDER, whose constitutional rights were being violated in their presence by other officers and/or defendant Sikirica.

79.     The defendants failed to intervene to prevent the unlawful conduct described herein.

80.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER's liberty was maliciously prosecuted and subjected to deprivation of his right to a fair trial.

81.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Conspiracy under 42 U.S.C. § 1983 and 1985)

82.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "81" with the same force and effect as if fully set forth herein.

83.     Defendant Michael Sikirica and the TPD defendants conspired to undermine MICHAEL DAVIS-GUIDER's rights to be free from false arrest, malicious prosecution and fabrication of evidence and/or deprivation of his right to a fair trial.

84.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER was falsely arrested, maliciously prosecuted and subjected to deprivation of his right to a fair trial.

85.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983 against Defendant City of Troy)

86.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "85" with the same force and effect as if fully set forth herein.

87.     The foregoing violations of plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to defendant City of Troy, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who were investigated, arrested, or prosecuted for alleged criminal activities.

88.     Prior to plaintiff's arrest, policymaking officials of the City of Troy, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

  a.  the manufacturing of probable cause to make an arrest, and initiate and continue a prosecution, and the avoidance of arrests and prosecutions based upon falsely manufactured or unreliable or false "evidence" created with the assistance of the Rensselaer County Medical Examiner; and

  b.  the duty to intervene to report misconduct committed by other officers.

89.     The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the defendant City of Troy, including but not limited to, the TPD Chief of Police, who knew (or should have known):

14

a.  to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

b.  that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision, and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

c.  that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

90.   Under the principles of municipal liability for federal civil rights violations, TPD's Chief of Police (or his/her authorized delegate) had final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters and lawful interrogation techniques.

91.   The TPD Chief of Police, personally and/or through his/her authorized delegates, at all relevant times had final authority, and constituted a policymaker for whom the TPD is liable, with respect to compliance by TPD employees with the above mentioned constitutional requirements.

92.   During all times material to this Complaint, the TPD Chief of Police owed a duty to the public at large and to plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and

15

discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

93.     The aforesaid policies, procedures, regulations, practices and/or customs of the TPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the TPD defendants of plaintiff's rights under the Constitution and the laws of the United States.

94.     The foregoing customs, policies, usages, practices, procedures and rules of the TPD were the direct and proximate cause of the constitutional violations suffered by plaintiff MICHAEL DAVIS-GUIDER as alleged herein.

95.     The foregoing customs, policies, usages, practices, procedures and rules of the TPD were the moving force behind the constitutional violations suffered by plaintiff MICHAEL DAVIS-GUIDER as alleged herein.

96.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the TPD, plaintiff MICHAEL DAVIS-GUIDER was deprived of his to be free from malicious prosecution and denial of his right to a fair trial and due process of law.

97.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff MICHAEL DAVIS-GUIDER's constitutional rights.

98.     As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983 Against Defendant Rensselaer County)

99.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "98" with the same force and effect as if fully set forth herein.

100.     Defendant MICHAEL SIKIRICA, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

101.     The aforementioned customs, policies, usages, practices, procedures and rules of Rensselaer County included, but were not limited to, inadequate screening, hiring, retaining, training and supervising its forensic pathologist, MICHAEL SIKIRICA and the Rensselaer County District Attorney and the Rensselaer County District Attorney's Office, which conspired with defendant SIKIRICA to offer false diagnoses leading to the wrongful arrests and prosecutions of innocent individuals, and which was the moving force behind the violation of plaintiff MICHAEL DAVIS-GUIDER's rights as described herein.  As a result of the failure of Rensselaer County to properly recruit, screen, train, discipline, and supervise its medical examiners and their relationship with law enforcement agencies and as well as with its District Attorney and Assistant District Attorneys, including the individual defendant MICHAEL SIKIRICA, defendant Rensselaer County has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

102.     The foregoing customs, policies, usages, practices, procedures and rules of Rensselaer County constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiff MICHAEL DAVIS-GUIDER.

103.    The foregoing customs, policies, usages, practices, procedures and rules of Rensselaer County and its medical examiner's office were the direct and proximate cause of the constitutional violations suffered by plaintiff MICHAEL DAVIS-GUIDER as alleged herein.

104.    The foregoing customs, policies, usages, practices, procedures and rules of Rensselaer County were the moving force behind the Constitutional violations suffered by plaintiff MICHAEL DAVIS-GUIDER as alleged herein.

105.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of Rensselaer County, plaintiff MICHAEL DAVIS-GUIDER was subjected to a conspiracy to maliciously prosecute him, and to deprive him of his right to fair trial.

106.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff MICHAEL DAVIS-GUIDER's constitutional rights.

107.    All of the foregoing acts by defendants deprived plaintiff MICHAEL DAVIS-GUIDER of federally protected rights, including, but not limited to, the right:

    A.    To be free from false arrest

    B.    To be free from malicious prosecution;

    C.    Not to be deprived of liberty without due process of law;

    D.    To be free from the failure to intervene; and

    E.    To be free from conspiracy to violate his rights.

108.    As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## Supplemental State Law Claims

109.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "108" with the same force and effect as if fully set forth herein.

110.    Within ninety (90) days after the claim herein accrued, plaintiff duly served upon, presented to and filed with the CITY OF NEW YORK, a Notice of Claim setting forth all facts and information required under the General Municipal Law 50-e.

111.    The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

112.    This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

113.    Plaintiff has complied with all conditions precedent to maintaining the instant action.

114.    This action falls within one or more of the exceptions as outlined in C.P.L.R. 1602.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(Malicious Prosecution under the laws of the State of New York)

115.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "114" with the same force and effect as if fully set forth herein.

116.    The defendant officers and defendant SIKIRICA initiated, commenced and continued a malicious prosecution against plaintiff MICHAEL DAVIS-GUIDER.

117.    Defendants City, as employer of the individually named defendant officers, and defendant County, as employer of defendant SIKIRICA, are responsible for their wrongdoing under the doctrine of *respondeat superior.*

118.    Defendants caused plaintiff MICHAEL DAVIS-GUIDER to be prosecuted without

probable cause until the charges were dismissed on or about August 25, 2016, after a jury acquitted plaintiff at trial.

119.   As a result of the foregoing, plaintiff MICHAEL DAVIS-GUIDER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff MICHAEL DAVIS-GUIDER demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury;

(B)    punitive damages against the individual defendants in an amount to be determined by a jury;

(C)    reasonable attorney's fees and the costs and disbursements of this action; and

(D)    such other and further relief as appears just and proper

Dated: New York, New York
        November 22, 2017

                                    BRETT H. KLEIN, ESQ., PLLC
                                    Attorneys for the Plaintiff
                                    305 Broadway, Suite 600
                                    New York, New York 10007
                                    (212) 335-0132

                                    By:     s/ Brett Klein
                                            BRETT H. KLEIN (BK4744)

20

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X

MICHAEL DAVIS-GUIDER,

                                  Plaintiff,               Docket No.

          -against-

CITY OF TROY, RONALD FOUNTAIN, Individually,
DANIELLE COONRADT, Individually, CHARLES MCDONALD,
Individually, RENSSELAER COUNTY, and MICHAEL SIKIRICA,
Individually, and JOHN and JANE DOE 1-10, Individually, (the
names John and Jane Doe being fictitious, as the true names are
presently unknown),

                                  Defendants.

------------------------------------------------------------------------------------X

**COMPLAINT**

**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for the Plaintiff MICHAEL DAVIS-GUIDER
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132