**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**MICHAEL DAVIS-GUIDER,**

**Plaintiff,**

**v.**

**CITY OF TROY; RONALD FOUNTAIN,**
**Individually; DANIELLE COONRADT,**
**Individually; CHARLES MCDONALD,**
**Individually; RENSSELAER COUNTY;**
**MICHAEL SIKIRICA, Individually; and JOHN**
**and JANE DOE 1-10, Individually (the names**
**John and Jane Doe being fictitious, as the true**
**names are presently unknown),**

**1:17-CV-1290**
**(FJS/DJS)**

**Defendants.**

_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF BRETT H. KLEIN, ESQ. PLLC** | **BRETT H. KLEIN, ESQ.** |
| 305 Broadway, Suite 600 | |
| New York, New York 10007 | |
| Attorneys for Plaintiff | |
| | |
| **PATTISON SAMPSON GINSBERG** | **DONALD J. SHANLEY, ESQ.** |
| **& GRIFFIN, PLLC** | |
| 22 First Street | |
| P.O. Box 208 | |
| Troy, New York 12181 | |
| Attorneys for Defendants City of Troy, | |
| Ronald Fountain, Danielle Coonradt, | |
| and Charles McDonald | |

**BAILEY, JOHNSON, DELEONARDIS**           CRYSTAL R. PECK, ESQ.
**& PECK, P.C.**                                          JOHN W. BAILEY, ESQ.
5 Pine West Plaza, Suite 507
Washington Avenue Extension
Albany, New York 12205
Attorneys for Defendants Rensselaer
County and Michael Sikirica

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Michael Davis-Guider ("Plaintiff") brings this action against the City of Troy

("Defendant City of Troy"), Ronald Fountain ("Defendant Fountain"), Danielle Coonradt

("Defendant Coonradt"), Charles McDonald ("Defendant McDonald"), Rensselaer County

("Defendant Rensselaer County"), and Michael Sikirica ("Defendant Sikirica") seeking

compensatory damages, punitive damages, and attorney's fees for alleged violations of his civil

rights. *See generally* Dkt. No. 1, Complaint. Defendant Rensselaer County and Defendant

Sikirica (hereinafter collectively the "County Defendants") have moved to dismiss all claims in

Plaintiff's complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. *See generally* Dkt. No. 14. Additionally, although not mentioned in their Notice of

Motion, the County Defendants seek dismissal of their co-Defendants' cross-claims against

them. *See* Dkt. No. 14-1 at 24-25.


## II. BACKGROUND

On February 26, 2015, Plaintiff was home with his girlfriend's daughter, "V.D.," who at

the time was two years seven months of age. At some point that day, Plaintiff discovered V.D.

unresponsive in her bed and immediately tried to administer C.P.R. and called 911. Emergency

personnel arrived and administered C.P.R.  V.D. remained unresponsive and was, therefore, transported to St. Mary's Hospital – Seton Hall.  V.D. was pronounced dead in the emergency room of the hospital.  Later that day, Defendant Fountain and Defendant McDonald, who were detectives with the City of Troy Police Department ("TPD"), questioned Plaintiff.  Plaintiff told the detectives that he found V.D. unresponsive in her bed and attempted to perform C.P.R. before calling 911.  Plaintiff denied having engaged in any acts that caused or could have contributed to V.D.'s death.

On February 27, 2015, Defendant Sikirica, who had a contract with Defendant Rensselaer County to conduct forensic investigations and prepare autopsy results, performed an autopsy on V.D. in the presence of "Defendant TPD officers."  Based on the results of the autopsy, Defendant Fountain requested that Plaintiff come to the station house for further questioning.  Plaintiff obliged and reiterated the same chain of events at the station house.

On August 15, 2015, Defendant Sikirica issued V.D.'s autopsy report in which he determined the manner of her death to be homicide.  In the report, Defendant Sikirica stated that V.D. died, specifically, of hypovelmic shock, which was brought on by a large hemoperitoneum created by multiple lacerations on V.D.'s liver.  The lacerations were caused by fractures of V.D.'s 9th and 10th ribs on her right side, which was caused by a blunt force trauma.  In his report, Defendant Sikirica also noted that V.D. was "reportedly found unresponsive with reported history of attempted cardiopulmonary resuscitation by a large adult."  On October 2, 2015, TPD arrested Plaintiff, charged him with manslaughter and remanded him to the Rensselaer County Jail, where he remained for roughly eleven months until he was acquitted at the conclusion of his criminal trial.

Thereafter, on November 22, 2017, Plaintiff commenced this action. In his complaint, Plaintiff asserted that Defendant Sikirica's medical opinion was unsupported and that Defendant Sikirica and Defendant TPD officers ignored clear facts, which led to fabricated evidence and his wrongful arrest and incarceration. Plaintiff claimed that each of the individual Defendants either directly participated in, supervised and approved of, conspired to participate in, or failed to intervene in illegal acts despite a meaningful opportunity to do so. Furthermore, Plaintiff asserted that his unlawful arrest and imprisonment were the direct result of inadequate policies, procedures, regulations, practices and/or customs of Defendant City of Troy, including the failure to properly instruct, train, supervise and/or discipline employees, which were implemented or tolerated by policymaking officials for Defendant City of Troy, including but not limited to, the TPD Chief of Police. Additionally, Plaintiff alleged that his unlawful arrest and imprisonment were the direct result of unconstitutional customs, policies, usages, practices, procedures and rules of Defendant Rensselaer County, which included, but were not limited to, inadequate screening, hiring, retaining, training and supervising of its forensic pathologist, Defendant Sikirica, and employees of the Rensselaer County District Attorney's Office. Plaintiff asserted that this was not an isolated event and that Defendant City of Troy and Defendant Rensselaer County were made aware from previous lawsuits, notices of claims, news reports, internal investigations, and failed prosecutions that Defendant Sikirica and many TPD officers had engaged in similar unlawful misconduct in the past.

Based on these allegations, Plaintiff asserted the following eight causes of action:

(1) false arrest/unlawful imprisonment under 42 U.S.C. § 1983 against the individual Defendants;

(2) malicious prosecution under 42 U.S.C. § 1983 against the individual Defendants;

(3) violation of the right to a fair trial under 42 U.S.C. § 1983 against the individual Defendants;

(4) failure to intervene under 42 U.S.C. § 1983 against the individual Defendants;

(5) conspiracy under 42 U.S.C. §§ 1983 and 1985 against the individual Defendants;

(6) municipal liability under 42 U.S.C. § 1983 against Defendant City of Troy;

(7) municipal liability under 42 U.S.C. § 1983 against Defendant Rensselaer County; and

(8) malicious prosecution under New York state law against all Defendants.[1]


## III. DISCUSSION

**A. The County Defendants' motion to dismiss Plaintiff's claims against them**

### 1. Legal standards

A motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.,* 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir. 2006)). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Elias v. Rolling Stone LLC,* 872 F.3d 97, 104 (2d Cir. 2017) (quotation omitted); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation omitted).

---

[1] In his complaint, Plaintiff asserts a state-law claim for malicious prosecution, in which he refers to the "CITY OF NEW YORK." *See* Complaint at ¶¶ 110-111. It appears that this reference to the City of New York may be a typographical error because none of the events underlying this action occurred in the City of New York.

"'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Determining whether to dismiss a plaintiff's claim for relief "entail[s] judgment calls on which reasonable minds can differ in a not insignificant number of cases" because it is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 191 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937).

Furthermore, pursuant to 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250 (1988) (citation omitted). Plaintiff has alleged that Defendant Sikirica was acting under color of state law, and the County Defendants do not challenge this assertion.

### 2. False arrest/unlawful imprisonment claim under 42 U.S.C. § 1983

A claim for false arrest under 42 U.S.C. § 1983 "derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir. 2006) (citation omitted). "When examining 42 U.S.C. § 1983 false arrest claims, federal courts "'look to the law of the state in which the arrest occurred.'" *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 600 (E.D.N.Y. 2017) (quoting *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006))).

In order to succeed on a false arrest claim under New York law, a plaintiff must establish that "'(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quotation omitted); *see also Carpenter v. City of New York*, 984 F. Supp. 2d 255, 264 (S.D.N.Y. 2013) (stating that, "[u]nder New York state law, a claim of false arrest requires a showing that the confinement was not privileged" (citation omitted)). "The existence of probable cause for an arrest 'is a complete defense to an action for false arrest.'" *Frederique v. Cnty. of Nassau,* 168 F. Supp. 3d 455, 476 (E.D.N.Y. 2016) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994)) (other citation omitted).

In an analogous case, *Galbraith v. Cnty. of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002), the Ninth Circuit held that "a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment." *Id.* at 1126 (citing *Cabrera v. City of Huntington Park,* 159 F.3d 374 (9th Cir. 1998)). The plaintiff in *Galbraith* claimed that the

defendant physician "recklessly disregarded the truth by asserting in his autopsy report that [the victim] was strangled by an assailant while ignoring abundant evidence that pointed to suicide." I*d.* at 1127. The plaintiff in *Galbraith* further asserted that the defendant physician deliberately lied in the autopsy report and in his communications with other investigators, which led to the plaintiff's unlawful arrest and prosecution. *See id.* The Ninth Circuit held that these false arrest allegations were sufficient to survive a Rule 12(b)(6) motion to dismiss. *See id.*

In support of their motion, the County Defendants argue that Plaintiff has failed to plead a cause of action for false arrest because Plaintiff has not stated facts that Defendant Sikirica intentionally confined him. The County Defendants contend that Defendant Sikirica simply stated that V.D.'s death was a homicide in his report, and TPD then used this information as evidence to later arrest and prosecute Plaintiff. The County Defendants assert that a complainant can only be held liable for false arrest if the complainant intentionally provided false information. The County Defendants assert that Defendant Sikirica cannot be liable for merely giving information to the legal authorities. Furthermore, the County Defendants argue that Plaintiff fails to allege facts that Defendant Sikirica actually fabricated evidence and contend that it was reasonable for Defendant Sikirica to come to his conclusion based on his observations. Finally, the County Defendants claim that the mere fact that Plaintiff was acquitted does not mean Defendant Sikirica intentionally falsified V.D.'s cause of death.

To the contrary, Plaintiff argues that Defendant Sikirica intentionally falsified his report, which played a material role in Plaintiff's arrest and prosecution. As noted, in his complaint, Plaintiff asserts that, when he discovered V.D. unresponsive in her bed, he immediately tried to administer C.P.R. and called 911. Emergency personnel arrived and administered C.P.R. but V.D. remained unresponsive and was, therefore, transported to St. Mary's Hospital – Seton Hall.

Although Plaintiff relayed this information to Defendant TPD officers and denied having engaged in any acts that could have contributed to V.D.'s death, Defendant Sikirica determined the manner of V.D.'s death to be homicide, noting that there was a "reported history of attempted cardiopulmonary resuscitation by a large adult." *See* Complaint at ¶ 31. Defendant Sikirica came to this conclusion after reviewing all of the evidence and in the presence of Defendant TPD officers. Defendant Sikirica made no mention in his report that other individuals performed C.P.R., despite having received the emergency room records, which confirmed that EMTs and hospital staff continued to administer C.P.R. for a significant period after Plaintiff had stopped, or that V.D. seemed ill prior to her unresponsive state and that Plaintiff found V.D. unresponsive before he or anyone else administered C.P.R.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court finds that Plaintiff has sufficiently pled a cause of action for false arrest against Defendant Sikirica. Accordingly, the Court denies the County Defendants' motion to dismiss Plaintiff's false arrest claim against Defendant Sikirica.

### 3. Malicious prosecution claim under 42 U.S.C. § 1983 and New York State law[2]

In order to sufficiently state a claim for malicious prosecution pursuant to 42 U.S.C. § 1983, "a plaintiff must allege facts plausibly suggesting the following four elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." *Thomas v. City of Troy*, 293 F. Supp.

---

[2] The only difference between a malicious prosecution claim under 42 U.S.C. § 1983 and New York State law is that a malicious prosecution claim under 42 U.S.C. § 1983 requires a "state actor."

3d 282, 294 (N.D.N.Y. 2018) (citing *Ying Li v. City of New York,* 246 F. Supp. 3d 578, 604

(E.D.N.Y. 2017) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010))).

Moreover, the plaintiff must also allege that a Fourth Amendment right was violated resulting in

"'a sufficient post-arraignment deprivation of liberty.'" *Ying Li*, 246 F. Supp. 3d at 605 (quoting

*Singer*, 63 F.3d at 117) (other citation omitted).

The County Defendants argue that Plaintiff has not sufficiently pled the four

requirements of a malicious prosecution claim against Defendant Sikirica. Specifically, they

claim that there is no allegation in the complaint that Defendant Sikirica targeted Plaintiff.

Moreover, the County Defendants assert that Defendant Sikirica was nothing more than a

potential witness and was not responsible for making the critical decision to prosecute. The

County Defendants, however, do not dispute that the criminal proceeding terminated in

Plaintiff's favor or that he suffered a sufficient post-arraignment deprivation of his liberty.


### *a. Initiation of a criminal proceeding against Plaintiff*

"To initiate or continue a criminal proceeding, 'a defendant must do more than report the

crime or give testimony. He must play an active role in the prosecution, such as giving advice

and encouragement or importuning the authorities to act.'" *Ying Li*, 246 F. Supp. 3d at 605

(quoting *Manganiello*, 612 F.3d at 163 (quoting *Rohman*, 215 F.3d at 217)); *see also Thomas,*

293 F. Supp. 3d at 294 (quotation omitted). "A defendant could have initiated a prosecution 'by

creating material, false information and forwarding that information to a prosecutor or by

withholding material information from a prosecutor.'" *Thomas,* 293 F. Supp. 3d at 294 (quoting

[*Ying Li*, 246 F. Supp. 3d] at 605 (quoting *Costello v. Milano*, 20 F. Supp. 3d 406, 415 [S.D.N.Y.

2014])).

In his complaint, Plaintiff alleges that Defendant Sikirica ignored evidence that contradicted his findings, omitted key information from his autopsy report, improperly documented that V.D.'s cause of death was homicide, and that his report was the only evidence used to support the decision to prosecute. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged that Defendant Sikirica initiated the criminal proceeding. *See Thomas,* 293 F. Supp. at 294 (holding that the plaintiff sufficiently alleged that the defendant medical examiner initiated the criminal proceeding because he "created a false autopsy report, improperly documented [the victim's] cause of death as a homicide, and provided that report to the prosecutor").

### b. Probable cause

"Probable cause to prosecute consists of 'facts and circumstances [that] would lead a reasonably prudent person to believe the plaintiff guilty.'" *Ying Li*, 246 F. Supp. 3d at 611 (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453 (N.Y. 1983))). Although "[a] grand jury indictment 'gives rise to a presumption that probable cause exists' and thereby defeats a claim for malicious prosecution" a plaintiff may "establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* at 611-12 (quotations omitted).

In his complaint, Plaintiff alleges that Defendant Sikirica, as well as the other individual Defendants, initiated and continued a criminal proceeding against him without probable cause. In this regard, Plaintiff alleges that Defendant Sikirica omitted key information from the autopsy report that contradicted his guilt and that said report was then relayed to the prosecutor's office

resulting in Plaintiff's arrest and criminal prosecution. Despite the existence of a grand jury indictment, accepting these allegations as true, the Court finds that Plaintiff has alleged facts plausibly suggesting that Defendant Sikirica lacked probable cause for commencing the proceeding against Plaintiff.

### c. Actual malice

Lastly, to plead a malicious prosecution claim, a plaintiff "must . . . allege malice for each of the [d]efendants." *Ying Li,* 246 F. Supp. 3d at 614 (citation omitted). "'[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.'" *Id.* (quoting [*Manganiello*, 612 F.3d] at 163)*;* (citing *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 271 (E.D.N.Y.2010) ("Actual malice requires pleading facts that show the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" (citation and quotation marks omitted))). "'[A] lack of probable cause generally creates an inference of malice.'" *Id.* (quoting *Manganiello*, 612 F.3d at 163); (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause - while not dispositive – 'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" (quoting *Conkey v. State*, 74 A.D.2d 998, 427 N.Y.S.2d 330, 332 (1980)))).

In his complaint, Plaintiff alleges that Defendant TPD officers influenced Defendant Sikirica, who omitted key information from the autopsy report, which led to Plaintiff's arrest. Specifically, Plaintiff asserts that, when he discovered V.D. unresponsive in her bed, he immediately tried to administer C.P.R. and called 911. Emergency personnel arrived and

administered C.P.R. but V.D. remained unresponsive and was, therefore, transported to St. Mary's Hospital – Seton Hall.  Although, Plaintiff relayed this information to Defendant TPD officers and denied having engaged in any acts that could have contributed to V.D.'s death, Defendant Sikirica determined the manner of V.D.'s death to be homicide, noting that there was a "reported history of attempted cardiopulmonary resuscitation by a large adult."  Defendant Sikirica came to this conclusion after reviewing all of the evidence and in the presence of Defendant TPD officers.  Defendant Sikirica made no mention in his report that other individuals performed C.P.R., despite having received the emergency room records, which confirmed that EMTs and hospital staff continued to administer C.P.R. for a significant period after Plaintiff had stopped, or that V.D. seemed ill prior to her unresponsive state and that Plaintiff found V.D. unresponsive before he or anyone else administered C.P.R.

Such allegations plausibly suggest that Defendant Sikirica recklessly disregarded Plaintiff's rights.  Accepting these allegations as true, the Court finds that Plaintiff has sufficiently pled malice.  Accordingly, the Court denies the County Defendants' motion to dismiss Plaintiff's malicious prosecution claim against Defendant Sikirica.

### 4. Violation of the right to a fair trial under 42 U.S.C. § 1983

"The claim of denial of the right to a fair trial due to fabricated evidence stems from the Sixth Amendment and the Due Process clauses of the Fifth, Sixth, [and] Fourteenth Amendments of the U.S. Constitution."  *Ying Li,* 246 F. Supp. 3d at 627 (citing *Holbrook v. Flynn*, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)) (other citation omitted).  "Fabrication of evidence constitutes a violation of the right to a fair trial."  *Thomas,* 293 F. Supp. 3d at 295 (citing *Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir. 2000)).  "[T]here is a constitutional right not to be deprived

of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." *Zahrey v. Coffey,* 221 F.3d 342, 344 (2d Cir. 2000). Furthermore, the Second Circuit has permitted "claims for both malicious prosecution and denial of [a right] to [a fair] trial based on the same alleged fabrication of evidence[.]" *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010) (citing *Ricciuti*, [124 F.3d] at 130-31).

"To state a claim of fabrication of evidence, a plaintiff must allege that 'an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.'" *Ying Li,* 246 F. Supp. 3d at 628 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016)).

The County Defendants argue that Plaintiff failed to plead facts establishing a cause of action against Defendant Sikirica for violating his right to a fair trial. Specifically, the County Defendants assert that, although Plaintiff uses the word "fabricate" loosely in his complaint, he does not, in fact, allege that Defendant Sikirica actually fabricated evidence.

The only element of this claim that the parties dispute is whether Defendant Sikirica fabricated information. In this regard, Plaintiff alleges that Defendant Sikirica omitted contradictory key information from his autopsy report that would have exonerated him and relayed that falsified evidence to the Rensselaer County District Attorney's Office, which led to his arrest and criminal prosecution. As stated previously, Plaintiff asserts that when he discovered V.D. unresponsive in her bed, he immediately tried to administer C.P.R. and called 911. Emergency personnel arrived and administered C.P.R. but V.D. remained unresponsive and

was, therefore, transported to St. Mary's Hospital – Seton Hall. Although Plaintiff relayed this information to Defendant TPD officers and denied having engaged in any acts that could have contributed to V.D.'s death, Defendant Sikirica determined the manner of V.D.'s death to be homicide, noting that there was a "reported history of attempted cardiopulmonary resuscitation by a large adult." Defendant Sikirica made no mention in his report that other individuals performed C.P.R. for a significant period, despite having received the emergency room records, which confirmed that EMTs and hospital staff continued to administer C.P.R. for a significant period after Plaintiff had stopped, or that V.D. seemed ill prior to Plaintiff finding her in an unresponsive state and that Plaintiff found V.D. unresponsive before he or anyone else administered C.P.R.

Accepting the allegations in Plaintiff's complaint as true, the Court finds that Plaintiff has sufficiently pled facts to state a plausible claim that Defendant Sikirica violated his right to a fair trial; and, therefore, the Court denies the County Defendants' motion to dismiss this claim against Defendant Sikirica.

### 5. Conspiracy claim under 42 U.S.C. § 1983[3]

In order to state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). "'[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a

---

[3] Plaintiff has withdrawn his conspiracy claim under 42 U.S.C. § 1985. *See* Dkt. No. 19, Plaintiff's Memorandum of Law in Opposition, at 19 n.2.

conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)).

The County Defendants argue that Plaintiff failed to plead facts establishing a cause of action for conspiracy under 42 U.S.C. § 1983. Specifically, the County Defendants contend that there was no agreement between Defendant Sikirica and the TPD officers to violate Plaintiff's constitutional rights and that there was nothing unlawful about Defendant Sikirica reviewing Plaintiff's testimony before issuing his autopsy report. According to the County Defendants, Plaintiff's conspiracy claim rests solely on the fact that Defendant Sikirica referenced TPD records in his report and that TPD officers arrested Plaintiff. The County Defendants assert that Plaintiff ignored statutory authority and the duty of a medical examiner to review all relevant evidence in determining cause of death. Finally, the County Defendants contend that, under Plaintiff's theory, every inquest performed by a medical examiner that involved police interaction would result in a conspiracy claim.

Plaintiff bases his conspiracy claim on an alleged agreement between the TPD officers and Defendant Sikirica to engage in unlawful conduct that led to Plaintiff's claims of malicious prosecution and violation of the right to a fair trial. As noted, according to Plaintiff's complaint, TPD officers interviewed Plaintiff and the appropriate medical personnel and then supervised Defendant Sikirica's autopsy. Plaintiff asserts that, when he discovered V.D. unresponsive in her bed, he immediately tried to administer C.P.R. and called 911. Emergency personnel arrived and administered C.P.R. but V.D. remained unresponsive and was, therefore, transported to St. Mary's Hospital – Seton Hall. Although, Plaintiff relayed this information to Defendant TPD

officers and denied having engaged in any acts that could have contributed to V.D.'s death, Defendant Sikirica determined, in the presence of said TPD officers, the manner of V.D.'s death to be homicide, noting that there was a "reported history of attempted cardiopulmonary resuscitation by a large adult." Defendant Sikirica made no mention in his report that other individuals performed C.P.R. for a significant period or that V.D. seemed ill prior to Plaintiff finding her in an unresponsive state. Finally, Plaintiff alleges that Defendant Sikirica's autopsy report failed to include key information that may have prevented Plaintiff from being arrested and criminally tried and did so in the presence of Defendant TPD officers who were aware of said key information.

Accepting the foregoing allegations as true, the Court finds that Plaintiff has sufficiently alleged that Defendant Sikirica and Defendant TPD officers conspired to fabricate evidence to undermine Plaintiff's rights. Therefore, the Court denies the County Defendants' motion to dismiss Plaintiff's § 1983 conspiracy claim against Defendant Sikirica.

### 6. Failure to intervene claim under 42 U.S.C. § 1983

"'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). The County Defendants argue that Defendant Sikirica is not a law enforcement officer and, therefore, does not have an affirmative duty to intervene. *See* Dkt. No. 14-1, County Defendants' Memorandum of Law, at 20 (citation omitted). In response, Plaintiff states that, "[w]ithout conceding the potential viability of [P]laintiff's failure to intervene claim, in the interest of streamlining [P]laintiff's

claims for trial, [P]laintiff does not contest[.]"  *See* Dkt. No. 19, Plaintiff's Memorandum of Law in Opposition, at 5 n.1.

Defendant Sikirica is not a law enforcement officer and, therefore, cannot be held liable for failing to intervene pursuant to 42 U.S.C. § 1983.  *See Thomas,* 293 F. Supp. 3d at 297 (citations omitted).  Accordingly, the Court grants the County Defendants' motion to dismiss Plaintiff's failure to intervene claim against Defendant Sikirica.

### 7. Municipal liability claim under 42 U.S.C. § 1983

"A municipality may be liable under 42 U.S.C. § 1983 if a municipal 'policy or custom' causes 'deprivation of rights protected by the Constitution.'" *Thomas,* 293 F. Supp. 3d at 297-98 (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); (citing *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012)).  "For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege 'sufficient factual detail' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." *Id.* at 298 (quoting *Plair v. City of New York,* 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011)).  "'A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff.'" *Id.* (quoting *Moran v. Cnty. of Suffolk,* 11-CV-3704, 2015 WL 1321685, at *9 (E.D.N.Y. 2015) (citing *Parker v. City of Long Beach*, 563 Fed. Appx. 39 [2d Cir. 2014] [failure to train];

*Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 [2d Cir. 2014] [widespread and persistent practice]; *Hines v. Albany Police Dep't*, 520 Fed. Appx. 5, 7 [2d Cir. 2013] [actions of policymakers]; *Schnitter v. City of Rochester*, 556 Fed. Appx. 5, 8 [2d Cir. 2014] [failure to train or supervise]; *Missel v. Cnty. of Monroe*, 351 Fed. Appx. 543, 545 [2d Cir. 2009] [formal policy and act of a person with policymaking authority for the municipality])).

The County Defendants argue that Plaintiff has not sufficiently alleged municipal liability against Defendant Rensselaer County. According to the County Defendants, in order to withstand a Rule 12(b)(6) motion, Plaintiff must plead that an official policy or custom caused him to be subjected to a denial of a constitutional right. The County Defendants assert that Plaintiff has not alleged a formal policy or that acts were ratified by a policy-making official that denied Plaintiff's constitutional rights. Furthermore, the County Defendants state that Plaintiff's allegations are limited to Defendant Rensselaer County's alleged inadequate screening, hiring, retraining, and supervising of its employees. However, neither of the incidents Plaintiff alleges serve as factual support for a municipal liability claim premised on failure to train or supervise employees. Specifically, the County Defendants contend that Defendant Rensselaer County does not train or supervise Defendant Sikirica because he is a medical professional. Rather, Defendant Rensselaer relies on Defendant Sikirica's education, training and ethical obligations as a licensed doctor.

In his complaint, Plaintiff asserts that his constitutional rights were violated as a result of Defendant Rensselaer County's failure to screen, hire, retain, train and supervise its employees, including Defendant Sikirica. Plaintiff further alleges that Defendant Rensselaer County was aware of its deficiencies as well as Defendant Sikirica's performance from other lawsuits, news reports, and failed prosecutions. Plaintiff contends that Defendant Rensselaer County was aware

that Defendant Sikirica did not act independently, was overworked, was not careful in his work, did not adequately investigate medical histories, and ignored other obvious medical evidence in his examinations which led to multiple unlawful and malicious prosecutions in the past. Specifically, Plaintiff points to the trials and later acquittals of Joseph McElheny and Adrian Thomas, which allegedly involved similar situations where Defendant Sikirica ignored obvious medical evidence when determining the cause of a child's death.  Finally, Plaintiff argues that the testimony taken at his trial confirmed that Defendant Sikirica was overworked, handling more cases than a medical examiner should and could at any given time, resulting in a deficient level of care and diligence than that required of a person in his position.

In *Thomas v. City of Troy,* 293 F. Supp. 3d 282 (N.D.N.Y. 2018), the plaintiff pointed to the cases of Joseph McElheny and Michael Davis, who were wrongly accused of murdering a child in their care as a result of Defendant Sikirica's false autopsy reports.  *See id.* at 298.  The court dismissed Thomas' *Monell* claims against Defendant Rensselaer County, however, because the cases of McElheny and Davis, incidents upon which the plaintiff in *Thomas* relied, had occurred well after Defendant Sikirica's false autopsy report; and, therefore, the court reasoned that Defendant Rensselaer County could not have known that the alleged unlawful practices in his case were occurring.[4]  *See id.* (citing *McLennon v. City of New York,* 171 F. Supp. 3d 69, 99 (E.D.N.Y. 2016) (finding a failure to plead municipal liability where an alleged unlawful stop of the motorist preceded four other unlawful stops)).

In this case, however, Plaintiff's reliance on the cases of Joseph McElheny, Michael Davis, and Adrian Thomas to support his *Monell* claim is not misplaced because the incidents in

---

[4] The *Thomas* court also dismissed the *Monell* claims, in the alternative, because they were untimely.  *See Thomas*, 293 F. Supp. 3d at 298.

those cases occurred well before Defendant Sikirica's allegedly false autopsy report was issued and used as evidence against Plaintiff. In his complaint, Plaintiff refers to these matters as well as Defendant Sikirica's testimony at Plaintiff's trial to support his claim that, although Defendant Rensselaer County was well aware of Defendant Sikirica's deficient level of care, it, nonetheless, relied on his autopsy report as a basis for the arrest and prosecution of Plaintiff. Specifically, Plaintiff asserts that Defendant Rensselaer County was "aware from lawsuits, notices of claims, complaints, news reports, and failed prosecutions, that its medical examiner, Defendant SIKIRICA, was . . . not acting independently, was overworked and was not careful in his work, did not adequately investigate the prior medical history of decedents, and had on other occasions offered faulty diagnoses and cause of death determinations in an effort to ultimately aid in the false arrest, fabrication of evidence and malicious prosecutions of innocent individuals[.]" *See* Complaint at ¶ 47. Plaintiff further claims that, "[d]espite knowing this, [Defendant Rensselaer] County relied on Defendant SIKIRICA's services in this case." *See id.* at ¶ 48.

Accepting these allegations as true, the Court finds that Plaintiff has alleged sufficient factual matter to state a plausible *Monell* claim against Defendant Rensselaer County based on its inadequate screening, hiring, retaining, training and supervising of its forensic pathologist, Defendant Sikirica, and employees of the Rensselaer County District Attorney's Office. Accordingly, the Court denies the County Defendants' motion to dismiss Plaintiff's municipal liability claim against Defendant Rensselaer County.

## B. Defendant Sikirica's immunity defense

### 1. *Absolute immunity*

"Federal courts have held that absolute immunity on a § 1983 claim is 'only available where the defendant can show that his or her function is so sensitive as to require a total shield from liability, and that absolute immunity is essential if that function is to be properly performed.'" *Thomas*, 293 F. Supp. 3d at 299 (quoting *Robison v. Via*, 821 F.2d 913, 919 (2d Cir. 1987)). "Thus, courts have extended a '"cluster of immunities [to protect] the various participants in judge-supervised trials" including: witnesses; grand jurors; jurors; prosecutors; sheriffs; coroners; . . . court reporters; clerks of the court; bailiffs; town licensing board members, social workers, and arbitrators.'" *Id.* (quotation and footnote omitted). "[C]ourts look specifically at the function being performed rather than the identity of the actor performing it" when determining absolute immunity. *Id.* at 299-300 (citing *Ying Li*, 246 F. Supp. 3d at 643-44).

According to the County Defendants, in New York State, a medical examiner's determination as to cause of death is a "quasi-judicial determination," and "government officials performing quasi-judicial functions are afforded absolute immunity for those functions."[5] *See* Dkt. No. 14-1, County Defendants' Memorandum of Law, at 12 (citing *Leib v. Paparo,* 84 A.D.2d 538, 538 (2d Dept. 1981) (holding that "a medical examiner's determination that a decedent committed suicide is a quasi-judicial determination"); *Tarter v. State,* 68 N.Y.2d 511, 518 (1986) (holding "logically, other neutrally positioned government officials, regardless of title, who are delegated judicial or quasi-judicial functions should also not be shackled with the fear of civil retribution for their acts")). Additionally, the County Defendants assert that "if an

---

[5] In their Reply Memorandum of Law, the County Defendants concede that "the Second Circuit has not decided this issue[.]" *See* Dkt. No. 23 at 7.

aggrieved party seeks to challenge a cause of death determination, they must bring an Article 78 proceeding under New York State Civil Practice Laws and Rules." *See id.* at 13 (citing *Infante v. Dignan,* 12 N.Y.3d 336 (2009)).

The key determination in granting absolute immunity is whether the defendant's function is investigative or prosecutorial. *See Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995); *see also Thomas,* 293 F. Supp. 3d at 300; *Ying Li,* 246 F. Supp. 3d at 643-44. Moreover, "when it may not be gleaned from the complaint whether the conduct objected to was performed . . . in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill*, 45 F.3d at 663 (citing *Lawson*, 863 F.2d at 263); *see also Thomas,* 293 F. Supp. 3d at 300 (holding that the court could not determine whether a medical examiner was acting in a prosecutorial role rather than an investigatory one when conducting an autopsy pre-conviction (citation omitted)).

As in *Thomas,* the Court cannot determine at this time whether, as a matter of law, Defendant Sikirica's role is investigative or prosecutorial. Thus, the Court denies the County Defendants' motion to dismiss Plaintiff's complaint against Defendant Sikirica based on an absolute immunity defense.

### 2. Qualified immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738) (other citation omitted). "As a result, a qualified immunity inquiry in a civil rights case generally

involves two issues: (1) 'whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation'; and (2) 'whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted.'" *Thomas,* 293 F. Supp. 3d at 300 (quoting *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007)).

The County Defendants argue that, if the Court determines that Defendant Sikirica is not entitled to absolute immunity, the Court should afford Defendant Sikirica qualified immunity for his cause of death determination. According to the County Defendants, qualified immunity is afforded to public officials performing discretionary official functions provided that those actions do not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See* Dkt. No. 14-1, County Defendants' Memorandum of Law, at 14 (citing *Doe v. Phillips*, 81 F.3d 1204, 1211 (2d Cir. 1996)). Furthermore, the County Defendants claim that an official is entitled to qualified immunity "where it was objectively reasonable for him to believe that the conduct in question was lawful" and that, in this case, it was objectively reasonable for Defendant Sikirica to find V.D.'s death to be a homicide since her ribs were broken, and Plaintiff provided no explanation for V.D.'s unresponsive state. *See id.* (citing *Kenney v. Clay*, 172 F. Supp. 3d 628, 637-38 (N.D.N.Y. 2016)).

"Plaintiff's right to be free from fabricated evidence in the form of [a] falsified autopsy report is clearly established." *Thomas,* 293 F. Supp. 3d at 300 (citing *Zahrey,* 221 F.3d at 355-56; *Ricciuti*, 124 F.3d at 130; *Weaver v. Brenner*, 40 F.3d 527, 533-34 (2d Cir. 1994); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 441 (E.D.N.Y. 2012); *Anilao v. Spota*, 774 F. Supp. 2d 457, 492 (E.D.N.Y. 2011)). In his complaint, Plaintiff asserts that he informed TPD officers that

he discovered V.D. unresponsive in her bed and immediately tried to administer C.P.R. and called 911. Plaintiff also alleges that emergency personnel arrived and also administered C.P.R but V.D. remained unresponsive and was, therefore, transported to St. Mary's Hospital – Seton Hall, where she was pronounced dead. Plaintiff stated that V.D. appeared tired and exhibited low energy prior to her unresponsive state, and he denied having engaged in any acts that could have contributed to her death. Nonetheless, alongside TPD officers, Defendant Sikirica determined that V.D. was killed by a "large adult" performing C.P.R. on the victim and broke her ribs. Plaintiff alleges that Defendant Sikirica excluded multiple key facts alleged in the complaint that would have exonerated Plaintiff.

Accepting these allegations as true, the Court finds that Plaintiff has sufficiently alleged that Defendant Sikirica fabricated his autopsy report and, because the right to be free from falsified autopsy report is clearly established, denies the County Defendants' motion to dismiss Plaintiff's claims against Defendant Sikirica based on the defense of qualified immunity.

### C. The County Defendants' motion to dismiss the City Defendants' cross-claims[6]

In their motion, the County Defendants also argue that the Court should dismiss the City Defendants' cross-claims against them. According to the County Defendants, although the Second Circuit has not weighed in on this issue, federal district courts in New York have routinely held that a party cannot seek indemnification or contribution for a 42 U.S.C. § 1983 claim. Moreover, the County Defendants claim that the Second Circuit has considered and accepted the principles on which those district courts relied in coming to this conclusion in other

---

[6] The Court will refer to Defendants City of Troy, Ronald Fountain, Danielle Coonradt, and Charles McDonald collectively as the "City Defendants."

similar situations. Finally, the County Defendants assert that both federal district courts and New York state courts have only allowed for indemnification when it is expressed or implied in the contracts between the parties, which is not the case in the present matter.

Neither the Supreme Court nor the Second Circuit has ruled on the question of whether there is a right to contribution between joint tortfeasors under 42 U.S.C. § 1983. *See Thomas,* 298 F. Supp. 3d at 301. However, the federal courts in New York "have generally held that there is no right to contribution in § 1983 actions." *Id.* (citing *De Ratafia v. Cnty. of Columbia,* No. 13-CV-0174, 2013 WL 5423871, at *18 (N.D.N.Y. Sept. 26, 2013) (Mordue, S.J.) ("[F]ederal law does not provide a basis for contribution for liability under Section 1983")) (other citations omitted). Moreover, "there is no reason to apply state law to § 1983 'unless such application would assist in obtaining damages through a civil actions for a denial of a federal civil right.'" *Thomas,* 298 F. Supp. 3d at 301-02 (quoting *Koch,* 869 F. Supp. at 1041). "However, the '[p]rinciples of contribution and indemnity are not of assistance to federal civil rights plaintiffs in pursuing their claims, and may inject issues into the litigation which could interfere with the prompt and orderly trial of such cases.'" *Id.* at 302 (quotation omitted). "'[C]ommon law or statutory indemnity and contribution principles serve different interests than the constitutional values sought to be vindicated in a § 1983 action.'" *Id.* (quotation omitted)

Additionally, as in *Thomas,* if this action proceeds to trial and a jury finds that the City Defendants are liable, they would be liable for their **own** actions and **not** for the actions of the County Defendants, whose actions, as alleged, were "distinct and divisible." *Id.* (citing [*Koch,* 869 F. Supp.] at 1042 (citing *Rosado,* 827 F. Supp. at 183)). Accordingly, the Court grants the County Defendants' motion to dismiss the City Defendants' cross-claims for contribution and indemnification against them.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the County Defendants' motion to dismiss Plaintiff's § 1983 failure to intervene claim against Defendant Sikirica, *see* Dkt. No. 14, is **GRANTED**; and the Court further

**ORDERS** that the County Defendants' motion to dismiss Plaintiff's § 1983 false arrest, malicious prosecution,[7] violation of his right to a fair trial, and conspiracy claims against Defendant Sikirica, *see* Dkt. No. 14, is **DENIED**; and the Court further

**ORDERS** that the County Defendants' motion to dismiss Plaintiff's § 1983 claim for municipal liability against Defendant County of Rensselaer, *see* Dkt. No. 14, is **DENIED**; and the Court further

**ORDERS** that the County Defendants' motion to dismiss Plaintiff's claims against Defendant Sikirica based on the defenses of absolute and qualified immunity, *see* Dkt. No. 14, is **DENIED**; and the Court further

**ORDERS** that Plaintiff's § 1985 conspiracy claim against **all** the individual Defendants is **DISMISSED** in light of Plaintiff's withdrawal of this claim; and the Court further

---

[7] As noted, Plaintiff brought a malicious prosecution claim under § 1983 and state law against the individual Defendants and a state-law malicious prosecution claim based upon the theory of *respondent superior* against Defendant Rensselaer County and Defendant City of Troy. The Court **DENIES** the County Defendants' motion to dismiss the state-law malicious prosecution claims against them for the same reasons as it has denied their motion to dismiss Plaintiff's § 1983 malicious prosecution claim against Defendant Sikirica.

**ORDERS** that the County Defendants' motion to dismiss the City Defendants' cross-claims against them is **GRANTED**; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Stewart for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 8, 2019
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge